Robert E. LEE and Fayette L. Lee; Edward C. Bethke and Eileen G. Bethke; and Dianna Hunter individually, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Clayton YEUTTER, Secretary of the United States Department of Agriculture; and Neal Sox Johnson, Acting Administrator of the Farmers Home Administration, Defendants.

No. Civ. 3–89–344.

United States District Court,
D. Minnesota,
Third Division.

Oct. 18, 1989.

589

Randi Ilyse Roth, Farmers Legal Action Group, Inc., St. Paul, Minn., for plaintiffs.

W. Scott Simpson, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

DEVITT, District Judge.

This matter came before the court on October 16, 1989 upon defendants' motion to dismiss and plaintiffs' motion for partial summary judgment.

Plaintiffs in this action ask the court to declare unlawful and set aside interim regulations promulgated by the Farmers Home Administration (FmHA) to implement debt restructuring provisions of the Agricultural Credit Act of 1987 (the "Act"). The Act provides that certain farmers who have outstanding delinquent loans with the FmHA may get their obligations restructured. Plaintiffs challenge portions of the interim regulations that deny restructuring for borrowers or former borrowers who have been granted discharges in bankruptcy. Plaintiffs claim the regulations violate the Act and the anti-discrimination section of the Bankruptcy Code, 11 U.S.C. § 525, and impose requirements which are impossible to fulfil upon borrowers who have filed bankruptcy.

For the following reasons, defendants' motion to dismiss will be granted. Accordingly, plaintiffs' motion for summary judgment will not be discussed in this order, although the arguments made in both sets of briefs have been considered by the court.

## BACKGROUND

The Agricultural Credit Act of 1987 (Pub.L. No. 100–233, 101 Stat. 1568–1718, codified at scattered sections of 7 U.S.C. and 12 U.S.C.) took effect on January 6, 1988 and established a framework for the restructuring of farmer program loans that have become delinquent. This restructuring scheme consists of (1) "primary loan service programs" including consolidation of multiple loans, rescheduling of payments, interest rate reduction, and write down of principle (7 U.S.C. § 1991(b)(3)) and (2) "preservation loan service programs" including homestead retention, leasebacks and buybacks (7 U.S.C. § 1991(b)(4)). Borrowers must be notified of these loan service programs when their payments are at least 180 days delinquent. 7 U.S.C. § 1981d(a).

The stated purposes of the restructuring scheme are to avoid losses to the government on farm program loans while ensuring that borrowers are able to continue farming. 7 U.S.C. § 2001(a). This is achieved via the following eligibility requirements for restructuring: (1) a default due to circumstances beyond the control of the borrower, (2) good faith on the part of the borrower, (3) the submission by the borrower of a reasonable preliminary plan for restructuring, and (4) a net recovery to the government (the present value of the restructured loan payments) that equals or exceeds what foreclosure would yield after transaction costs. 7 U.S.C. § 2001(b).

The Act's loan service programs are available, however, only to "borrowers" who are indebted to the FmHA. The Act defines "borrower" for these purposes as follows:

(1) The term 'borrower' means any farm borrower who has outstanding obligations to the Secretary under any farmer program loan, without regard to whether the loan has been accelerated, but does not include any farm borrower all of whose loans and accounts have been foreclosed on or liquidated, voluntarily or otherwise.

7 U.S.C. § 1991(b)(1).

The FmHA has interpreted "borrower" not to include farmers who have had their personal debt to the FmHA discharged in bankruptcy under Chapter 7 even though they still hold title to the real estate which secures the debt and upon which FmHA may still foreclose. Accordingly, the regulations provide no notice of debt restructuring to those who received their discharge before January 6, 1988 (unless the borrower had reaffirmed his debt). 53 Fed.Reg. 35722 (Sept. 14, 1988) to be codified at 7 C.F.R. § 1951.907(d); FmHA AN No. 1837 (1951) (Dec. 23, 1988). The FmHA's position is that because the debtor has been released from personal liability for the FmHA debt, he no longer has any outstanding obligations to FmHA and thus does not qualify as a "borrower" under the Act.

Plaintiffs in this action are "persons in Minnesota who had FmHA Farmer Program debt discharged in a Chapter 7 bankruptcy who still hold title to the property that serves the debt and who had not received a Notice of Loan Service as of the time of filing the bankruptcy action." Plaintiffs' class definition. Plaintiffs claim they are "borrowers" under the Act because their loans have not been foreclosed on or liquidated and thus they still have outstanding obligations to FmHA.

## DISCUSSION

### A. *Standing*

▮ Defendants first argue that plaintiffs do not have standing to bring this suit. This argument is without merit. Plaintiffs have alleged that they personally have suffered a threatened injury as a result of defendants' alleged illegal conduct which would likely be redressed by a favorable judicial decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Plaintiffs face the imminent foreclosure of their farms. Foreclosure could be avoided under the Act's restructuring program if the court set aside the regulations and held that plaintiffs were "borrowers" under the Act.

## B.  *Are Plaintiffs "Borrowers"?*

The central issue in this case is whether plaintiffs are "borrowers" under the Act.  It must first be determined what deference is owed to the Secretary's interpretation of the statute.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

The court finds that Congress has not directly addressed the precise question at issue here.  Congress has expressed its intent to keep borrowers on their farms if this can be done cost efficiently.  7 U.S.C. § 2001.  However, Congress has not spoken on the issue of how the Act is to effect FmHA borrowers who have elected to have their debts discharged in Chapter 7 bankruptcy.

To give such borrowers another chance to refinance their farms would seem to be in keeping with the generally expressed intent of Congress to keep these borrowers on their farms.

However, in determining eligibility for restructuring, Congress defined "borrower" as one who has "outstanding obligations to the Secretary."  In a strict sense, after a debtor has had a secured loan discharged under Chapter 7 he no longer has any obligations on the loan, even though the creditor's lien remains on the debtor's property which is subject to foreclosure.  The Chapter 7 proceeding completely discharges the debtor's personal liability in the absence of reaffirmation. The secured creditor's *in rem* interest in the property remains, however, and may be enforced via foreclosure.  But the lien which survives the discharge "creates, constitutes, or imposes no legal obligations upon the debtor." *In re Binford,* 53 B.R. 307, 309 (Bankr.W.D.Ky.1985); *see also In re Johnson,* 96 B.R. 326 (D.Kan.1989) (following "majority" view that lien on property for debt discharged under Chapter 7 is not a "claim" against debtor and thus cannot subsequently be scheduled under Chapter 13); *but see, e.g., In re Hagberg,* 92 B.R. 809 (Bankr.W.D.Wis.1988) (claim against property of debtor is claim against debtor for purposes of Bankruptcy Code); *In re Metz,* 820 F.2d 1495 (9th Cir.1987) (Chapter 13 petitioner may include a mortgage claim within a plan even though the underlying obligation of the mortgage was discharged under Chapter 7).  After discharge the mortgagee only holds a lien against the secured property, he does not have any claim against the debtor.  Thus the debtor no longer has an obligation to the mortgagee.

If the word "obligation" were read in a broader sense, however, the phrase stating " 'borrower' ... does not include any farm borrower all of whose loans and accounts have been foreclosed on or liquidated" would seem to imply that a Chapter 7 debtor might still qualify for restructuring if the FmHA had not yet foreclosed upon the property securing the discharged loan.

The court concludes that Congress has simply not addressed the precise question at issue here.  Accordingly, the Secretary's interpretation of the statute must be given considerable deference.  Although the Secretary's interpretation may not be the interpretation the court would have reached on its own, it is a "sufficiently rational one to preclude a court from substituting its judgment for that of [the FmHA]." *Chemical Manufacturers Association v. Natu-*

*ral Resources Defense Council,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985).

Perhaps the strongest argument for the FmHA's interpretation is that once the debtor's debt has been discharged under Chapter 7, the debtor has no more obligation to the Secretary, and there remains no payments to be deferred or debt to be restructured. One court has specifically followed this rationale. *In re Duncan,* 107 B.R. 754, 757 (Bankr.W.D.Okla. Sept. 28, 1988); *see also Anderson v. Block,* No. 83–4187–CV C–5 (W.D.Mo. July 5, 1983) (using same rationale in rejecting claim for deferral under 7 U.S.C. § 1981a). It is a rational determination to conclude that debtors like plaintiffs no longer have any outstanding obligations to the Secretary and thus do not qualify for restructuring under the Act.

The Secretary's interpretation is also reasonable because it can be said that plaintiffs have elected their remedy. By choosing to proceed under Chapter 7, plaintiffs elected to sever their ties with their creditors, instead of trying to restructure their debt which they could have done under other chapters of the Bankruptcy Code.

Plaintiffs also argue that FmHA's interpretation is arbitrary because plaintiffs are considered "borrowers" by the regulations under the preservation loan servicing sections of the Act (homestead protection, buybacks, leasebacks). 53 Fed.Reg. 35,-731–32 (Sept. 14, 1988) (to be codified at 7 C.F.R. § 1951.911(a)(5)). Plaintiffs argue the Secretary's conflicting interpretations are arbitrary because Congress applied the same statutory definition of "borrower" to both programs. *See* 7 U.S.C. § 1991(b)(1). The distinction makes sense, though, because plaintiffs cannot be eligible for restructuring of their debt because they no longer have any debt. However, plaintiffs could buy back or lease back their property despite the fact that they no longer owe any debt on it.

The court finds the FmHA's regulations to be a reasonable interpretation of the Act.

## C. *The Anti–Discrimination Provision of the Bankruptcy Code*

Plaintiffs' second claim alleges that the regulation's exclusion from debt restructuring of former borrowers who were granted pre-Act discharges, violates the anti-discrimination provision of the Bankruptcy Code, 11 U.S.C. § 525. That provision prevents a governmental unit from denying, revoking, suspending or refusing to renew "a license, permit, charter, franchise, or other similar grant ..." to a person solely because he has been a debtor under the Code. 11 U.S.C. § 525(a). However, this provision does not prohibit the distinction made in the interim regulations, because plaintiffs, in wanting to be considered for debt restructuring, do not seek a "license, permit, charter, franchise, or other similar grant." The different treatment accorded former borrowers discharged in bankruptcy is akin to a decision relating to the further extension of credit which is permissible. *In re Watts,* 876 F.2d 1090 (3d Cir.1989); *In re Goldrich,* 771 F.2d 28 (2d Cir.1985). Moreover, plaintiffs are not excluded from restructuring "solely" because they have been debtors in bankruptcy. Plaintiffs are excluded because they are no longer "borrowers" as required by the Act, a requirement that applies to all who seek restructuring.

The court finds that the regulations do not violate the anti-discrimination provisions of the Bankruptcy Code. The court also notes that at the hearing, plaintiffs expressed their intent to dismiss this claim for relief.

## D. *The Reaffirmation Requirements of the Regulations*

Plaintiffs lastly claim that the regulations unlawfully require farmers to reaffirm their debts in bankruptcy. Plaintiffs' allegation that the regulations require farmers to reaffirm their debts *after* discharge is false and based upon a misreading of the regulations.

With respect to *pre*-discharge reaffirmation requirements, the interim regulations require borrowers who are currently in bankruptcy to reaffirm their FmHA debts

and have the automatic stay lifted to retain eligibility for debt restructuring consideration. *See* 53 Fed.Reg. at 35,786–87 and 35,788 (to be codified at 7 C.F.R. § 196247(a)(3) and § 1962.49). Plaintiffs claim these requirements violate the Act and Section 525 of the Bankruptcy Code. It should be noted that plaintiffs did not plead this argument in their complaint. The third claim for relief only attacks the alleged post-discharge reaffirmation requirement.

Nonetheless, the court finds these pre-discharge requirements valid for essentially the same reasons as are discussed in Sections B and C of this order. The FmHA debt needs to be reaffirmed because otherwise the debtor will not be a "borrower" after the debt is discharged. The limited lift of the automatic stay is appropriate in light of 11 U.S.C. § 362 which prohibits any actions to recover a pre-filing debt once the petition has been filed. Section 525 of the Bankruptcy Code is not violated because this requirement does not concern a "grant" under that section. The pre-discharge requirements for borrowers in bankruptcy are a reasonable means of regulating the restructuring program under the Act and do not violate the anti-discrimination provisions of the Bankruptcy Code.

## CONCLUSION

IT IS ORDERED that:

1. Defendants' motion to dismiss is GRANTED; and

2. Plaintiffs' motion for summary judgment is DENIED as moot.